IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JULIO CESAR PORTILLO SOSA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-0522-AJT-WEF |
| | ) | |
| KRISTI NOEM, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Julio Cesar Portillo Sosa's Petition for Writ of Habeas Corpus, [Petition] (the "Petition"), seeking release from Immigration and Customs Enforcement ("ICE") custody on the grounds that his ongoing detention violates his due process rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto [Doc. No. 6] and for the reasons stated below, the Petition is **GRANTED** and Petitioner is ordered **RELEASED**.

## I.    BACKGROUND

Petitioner is a 44-year old native and citizen of Honduras who alleges that he entered the United States in January 1998 at age seventeen, fleeing gang-related persecution in Honduras. [Petition] ¶¶ 14-15; [Doc. No. 4-1] ¶ 5. Plaintiff alleges that he was apprehended and placed in removal proceedings after this initial entry, but the outcome of these proceedings is not in the record. [Petition] ¶ 16. He lived in this U.S. until approximately 2005, when he was removed to Honduras pursuant to a criminal conviction. *Id.*; [Doc. No. 4-1] ¶¶ 6-7. After allegedly facing

1

further gang-related persecution in Honduras, Petitioner re-entered the U.S. later that same year and was ultimately apprehended and convicted of illegal re-entry; in connection with this conviction he served a 72-month criminal sentence and was placed in immigration proceedings to reinstate his prior order of removal. [Petition] ¶ 17; [Doc. No. 4-1] ¶ 8. During the course of these proceedings, Petitioner expressed a fear of returning to Honduras, which ultimately led to his being granted deferral of removal under the United Nations Convention Against Torture ("CAT") and its implementing regulations at 8 C.F.R. § 1208.17(a) on March 28, 2013. [Petition] ¶ 18; [Doc. No. 4-1] ¶¶ 8-10. Respondents then appealed this decision to the Board of Immigration Appeals and in September 2013 attempted unsuccessfully to remove Petitioner to Spain, all while he remained detained; he was ultimately released under an Order of Supervision ("OSUP") on December 16, 2013, approximately nine months after obtaining CAT relief. [Doc. No. 4-1] ¶¶ 10-12.

Following his release, Petitioner lived in Virginia for over a decade, during which he evidently worked consistently under several "Category C18" employment authorizations (see, e.g. [P Exh. 6]), had no interactions with the criminal justice system, and fully complied with the terms of his OSUP. [Petition] ¶ 20. On November 13, 2025, Petitioner was re-detained by ICE while attending a regularly scheduled check-in pursuant to the terms of his OSUP. *Id*. ¶¶ 20-21; [Doc. No. 4-1] ¶ 13. On November 22, 2025, Respondents "erroneously" removed Petitioner to Honduras in violation of the Immigration Judge's ("IJ") order deferring his removal; his attorney then successfully secured his return to immigration detention in the U.S. pursuant to ICE's "Return Directive;" he remains detained in the Caroline Detention Center. [Petition] ¶¶ 22-25; [Doc. No. 4-1] ¶ 14. On February 19, 2026, Respondents notified Petitioner that they intended to remove him to Mexico; he promptly claimed a fear of being removed to Mexico and was granted a third country

screening with U.S. Citizenship and Immigration Services ("USCIS"), which issued a negative reasonable fear determination. [Doc. No. 4-1] ¶¶ 15-16. Respondents claim that as a result of the pending Habeas proceeding, they have paused their third-country removal efforts. *Id*. ¶ 17.

## II.   LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held that in order to

comply with due process, a period six months of detention is presumptively reasonable and that habeas relief is proper after the expiration of that detention period so long as the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the government fails to rebut that showing.

### III.   DISCUSSION

Petitioner first claims that his ongoing detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*, and his fifth amendment due process rights (Counts I and II).  He also brings an *Accardi* claim based on alleged deficiencies in the notice received with respect to the revocation of his OSUP in violation of 8 C.F.R. § 241.4(l) (Count IV).[1]  He requests, *inter alia*, that the court: (1) restore his OSUP; (2) order his release; and/or (3) permanently enjoin Respondents from removing Petitioner to Honduras unless or until his order of deferral of removal is terminated, or to any other country without a reasonable opportunity to apply for protection as to that country, including all appeals therefrom. [Petition] at 18–19.

### A) **Jurisdiction Under Ongoing *D.V.D.* Litigation**

As an initial matter, Respondents submit that Petitioner's membership in the "*D.V.D.* class" should bar review of his claims. [Doc. No. 4] at 10–13 (citing *D.V.D. v. Department of Homeland Security,* 778 F. Supp. 3d 355, 2025 WL 1142968 (D. Mass. 2025)).  Petitioner, in

---

[1] Petitioner also argues in Count V that his potential removal to a third country without review by an Immigration Judge ("IJ") of his claim of reasonable fear as to that county would violate his due process rights. Respondents argue that this Court lacks jurisdiction to consider this claim, both due to 8 U.S.C. § 1252(g) which divests District Courts of jurisdiction over claims arising from execution of removal orders, and because the removal challenge is not substantially related to Petitioner's *current detention*. [Doc. No. 6] at 18–21 (*citing Walker v. Wainwright*, 390 U.S. 335, 337 (1968) ("the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention"). Petitioner concedes that he has not yet expressed a fear of removal to any third country nor even received paperwork from USCIS designating any third country. [Petition] ¶ 26 ("*if* Nicaragua is formally designated as a country of removal, Petitioner *intends* to express a fear of removal to that country") (emphasis added); and for this reason, the Court concludes that this claim in not ripe for disposition; and it will be dismissed without prejudice.

Reply, contends that *D.V.D.* challenges DHS's programmatic policies regarding removal procedures, not the fact of immigration detention during these procedures, and therefore does not bar jurisdiction. [Doc. No. 5] at 13.

In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025), On April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. The class consists of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 222 L. Ed. 2d 1109 (2025).

As Petitioner notes, *D.V.D* does not address the issues relevant to Petitioner's claim; namely, the propriety of detention under 8 U.S.C. § 1231 pending effectuation of removal and the procedural adequacy of his OSUP revocation, *inter alia*. [Doc. No. 5] at 13–14. And multiple district courts including courts in this district have rejected arguments identical to that raised by Respondents on this basis. *See Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *3 (D. Md. Sept. 8, 2025). The Court further concludes that there are compelling circumstances to

5

consider Petitioner's claims. Petitioner brings claims concerning his ongoing detention and OSUP revocation under the due process clause and the INA that are substantively different than those at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to. *D.V.D.*, 778 F. Supp. 3d at 387–90. As other courts have concluded, "to dismiss Petitioner's claims for [] relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886 (D. Md. Oct. 7, 2025). Nor does the Supreme Court's stay of the district court's preliminary injunction change this Court's disposition since, as other courts have observed, the Supreme Court has not offered any analysis of its stay, let alone opined on whether the stay was based on the merits or the procedural posture of the case. *Santamaria Orellana*, 2025 WL 2841886 at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of D.V.D. the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims."). Therefore, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

### B) The Revocation of Petitioner's Release was Unconstitutional Under *Accardi*

Petitioner argues that Respondents' revocation of his OSUP and his resulting detention violated their own regulations, chiefly under 8 C.F.R. § 241.4(l), in several ways: (1) that following

6

his re-arrest, he was not afforded an opportunity to contest any facts against him or respond in any way to the revocation, in violation of 8 C.F.R. § 241.4(l)(1); (2) that Respondents did not and cannot justify their revocation with changed circumstances rendering his removal foreseeable (due in part to their prior issuance of a work authorization which entails a factual finding of infeasibility); and (3) that his OSUP was revoked by an official who lacked authority to do so, in violation of 8 C.F.R. § 241.4(l)(2).[2] [Petition] ¶¶ 68-74; *see also Accardi*, 347 U.S. 260 (1954) (holding that federal agency violated habeas petitioner's due process rights by violating its own regulations).

8 C.F.R. § 241.4(l)(2) provides that "The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release" and that "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." When an OSUP is revoked, "the alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Respondents do not meaningfully dispute any of Petitioner's factual assertions, but rather argue generally that the governing regulations afford them broad discretion over such revocation decisions.[3] [Opp.] at 16–17. Petitioner's notice of revocation, submitted as an exhibit to Respondents' Opposition, does not appear to have been signed by either of the two types of

---

[2] Petitioner also claims that Respondents detained him without issuing a written Notice of Revocation, as required by 8 C.F.R. § 241.4(l)(1). [Petition] ¶ 69. However, as noted above, Respondents attached the written notice to their Opposition. [Doc. No. 4-2].

[3] Respondents also contend that "§ 287.3 does not apply to aliens with outstanding removal." [Opp.] at 16. However, Petitioner's claim does not invoke the cited section, and the Court has repeatedly granted *Accardi* relief to petitioners with outstanding orders of removal. See, e.g. *Maravilla Martinez v. Simon et al.,* 1:25-cv-01856-AJT-WEF (E.D. Va. Feb. 20, 2026).

7

officials expressly authorized in section 241.4(l)(2), but rather by a Detention and Deportation Officer ("DDO"). [Doc. No. 4-2]. Furthermore, the Notice is not expressly based on a finding that revocation is in the public interest or that "circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner," as required by section 241.4(l)(2). *Id*. Accordingly, as it has previously done on similar facts (*see, e.g. Juarez Villatoro v. Noem*, 1:25-cv-2359, AJT-WEF [Doc. No. 18] (E.D. Va. Jan. 6, 2026)), the Court concludes that Petitioner has made the required showing of a due process violation under the *Accardi* doctrine based on these deficiencies in his notice of revocation.

With respect to an appropriate remedy for this successful *Accardi* claim, *Accardi* stands for the proposition that an agency's actions in violation of its own regulations are invalid, and accordingly, relief under this type of claim should generally be the vacatur of the challenged agency action. As the challenged action here is revocation of an order of release, the corresponding appropriate relief is to order Petitioner's release, as multiple courts have done on analogous facts. *See, e.g. Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) (granting habeas petition for revocation of order of supervision in violation of §241.4(l)); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) ("The Court's research indicates that every district court, except two, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered") (internal quotations omitted).

### C) Challenge to Detention Under 8 U.S.C. § 1231(a)(6) and *Zadvydas*

Petitioner argues that because (1) "[his] 90-day statutory removal period (under 8 U.S.C. § 1231(a)(3)) and the six-month presumptively reasonable period for continued removal efforts

would have expired… in February 2014" ([Petition] ¶ 55); and (2) there is no reasonable probability of removal within the foreseeable future (*Id.* ¶ 32), ICE retains no authority to detain him and he must be released.

The parties dispute whether the Petition is premature under *Zadvydas* – particularly, whether the six month "presumptively reasonable" period for detention has elapsed.[4] However, because Petitioner's *Accardi* claim disposes of the Petition, it is not necessary for the Court to determine whether he is separately entitled to release under *Zadvydas*.

### IV.    CONCLUSION

For all the above reasons, the Petition is granted, and it is hereby

**ORDERED** that U.S. Immigration and Customs Enforcement's November 13, 2025 revocation of release [Doc. No. 4-2] be, and the same, hereby is, **VACATED**; and it is further

**ORDERED** that Respondents shall release Petitioner from detention immediately and place him under his prior Order of Supervision; and it is further

**ORDERED** that Respondents are **ENJOINED** from re-detaining the Petitioner based on a revocation of his Order of Supervision without first complying in all respects with the applicable regulations concerning the revocation of his Order of Supervision, as identified herein, including, without limitation, stating in the Notice the specific factual basis for any claim of "change in circumstances," and if the stated change in circumstances relates to a significant likelihood of

---

[4] This dispute appears to hinge solely on whether the time Petitioner spent in Honduras after his wrongful removal there should count toward the *Zadvydas* analysis even though he was not technically in the physical custody of Respondents during this time: the parties cite no authority on the unique issue of whether time spent subject to wrongful removal should count toward time in detention for purposes of *Zadvydas*, nor is the Court aware of any. It is clear that the equities in this case weigh in favor of Petitioner's position that it should: Respondents should not benefit from their unlawful removal of Petitioner to a country in which he faced a significant likelihood of torture, particularly given that absent this removal Petitioner would likely have remained in their custody. However, as noted herein the Court need not fully analyze this issue.

removal in the reasonably foreseeable future, the factual basis for that claimed change, including what efforts have been made to locate a country for removal, the name of the country to which Petitioner will be removed and the authorizations received from that country for that removal.

All other claims and forms of relief requested in the Petition are denied without prejudice.

The Clerk is directed to send copies of this Order to all counsel of record, and to terminate the case.

Anthony J. Trenga
Senior U.S. District Judge

Alexandria, Virginia
May 4, 2026

10